IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| William D. Sibert,<br><br>      Plaintiff,<br>vs.<br><br>Raycom Media, Inc., Adam Cannavo, and Lyle Schulze,<br><br>      Defendants. | Civil Action No. 3:17-cv-1544-CMC<br><br>**OPINION AND ORDER<br>ON PLAINTIFF'S MOTION TO<br>REMAND AND DEFENDANTS'<br>MOTION TO DISMISS** |

  Plaintiff William D. Sibert ("Plaintiff") brings this action seeking recovery from his employer, Raycom Media, Inc. ("Raycom") and two co-employees, Adam Cannavo ("Cannavo") and Lyle Schulze ("Schulze"), for intentional infliction of emotional distress ("IIED"). This matter is before the court on two motions: Plaintiff's motion to remand (ECF No. 7) and Defendants' motion to dismiss for failure to state a claim (ECF No. 5). Both motions turn on whether Plaintiff has a viable claim for intentional infliction of emotional distress against the various Defendants, as explained further below, and both will be addressed in this Order.

  Defendants Raycom, Cannavo, and Schulze removed the action to this court based on diversity jurisdiction. Plaintiff asserts this case lacks complete diversity, as he and Schulze are both citizens of South Carolina. Whether removal is proper depends on whether Schulze was fraudulently joined in this action.

  For the reasons below, the court finds Schulze was fraudulently joined and therefore is dismissed for lack of subject matter jurisdiction. In addition, Plaintiff has failed to state a claim against Cannavo and Raycom, and Defendants' motion to dismiss is granted as to those defendants.

# COMPLAINT ALLEGATIONS[1]

Plaintiff was employed by WIS-TV as a Senior Editor when WIS-TV was bought by Raycom. ECF No. 1-1, Compl. ¶¶ 1, 2. In 1998, well before this purchase, Plaintiff was diagnosed with multiple sclerosis ("MS"). *Id.* at ¶ 7. Although Plaintiff "had to adapt his lifestyle to less strenuous activities," this disease did not interfere with his work performance, and Plaintiff's supervisors "worked with him with his illness and have minimally been required to reasonably accommodate him on occasions." *Id.* at ¶¶ 7, 8. In November 2016, Plaintiff "was summoned by his superiors to a meeting with Raycom representatives" to discuss the differences in station operation and his job position after the sale. *Id.* at ¶ 11. Because this meeting was scheduled at a meeting room over 100 yards from Plaintiff's work station, walking to this location would cause him physical difficulty and pain. *Id.* Plaintiff requested the meeting be moved to a location nearer to his work station, but this request was denied. *Id.* at ¶ 12. Plaintiff was therefore unable to attend the meeting, suffered substantial stress and anxiety, and consequently missed an entire day of work. *Id.*

Plaintiff alleges he was thereafter harassed by Schulze, the manager and Vice President of WIS-TV, and Cannavo, a human resources specialist for Raycom in Charlotte, as well as other employees of Raycom. *Id.* at ¶ 13. Plaintiff was notified verbally his job description was changing, and he would be required to carry cameras and other equipment and would no longer be able to

---

[1] In light of the standards discussed below, the court accepts allegations of the Complaint as true.

rely on cameramen and other employees for this function. *Id.* However, his duties and title were not changed until on or about March 15, 2017, when Plaintiff was notified by his supervisor he would not be able to fulfill the new requirements of his job because of his disability, and would therefore need to contact human resources to apply for an accommodation. *Id.* at ¶ 15. Although Plaintiff did so, Cannavo responded Raycom would not be able to accommodate Plaintiff and therefore Plaintiff suffered loss, including having to use leave to make up for a reduction in pay. *Id.* at ¶ 16.

### 1. **Motion to Remand**

As Defendants have removed based on diversity, jurisdiction in this court depends on whether Schulze, who has the same citizenship as Plaintiff, is fraudulently joined.[2] In response to Plaintiff's motion to remand, Defendants argue the court should ignore the citizenship of Schulze as Plaintiff cannot establish a claim for IIED against him because Plaintiff's claim falls exclusively within the scope of the South Carolina Workers' Compensation Act. *See* S.C. Code Ann. §42-1-540 (2009). Without Schulze as a defendant, this court would have diversity jurisdiction over this matter.

---

[2] The citizenship of Cannavo and Raycom is undisputedly diverse from Plaintiff. Defendants note Plaintiff was employed by WIS-TV, a Delaware limited liability company with its principal place of business in Alabama. The parties appear to agree the citizenship of the company employing both Plaintiff and the individual defendants is diverse from Plaintiff.

3

For the reasons set forth below, the court finds Defendants have met their burden of demonstrating Schulze was fraudulently joined. Accordingly, the court denies the motion to remand (ECF No. 7) and Schulze is dismissed without prejudice.

   *a. Standard*

The party removing an action bears the burden of demonstrating jurisdiction properly rests with the court at the time the petition for removal is filed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed. *Mulcahey*, 29 F.3d at 151. If federal jurisdiction is doubtful, remand is necessary. *Id.*

To be removable to federal court, a state action must be within the original jurisdiction of the district court. *See* 28 U.S.C. § 1441. District courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

When a plaintiff has fraudulently joined a non-diverse defendant, a district court may retain jurisdiction and disregard the non-diverse party. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). To show fraudulent joinder of a party, a removing party "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder

4

bears a heavy burden -- it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424.

The Fourth Circuit has described this standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (citations omitted). All the plaintiff needs to show is that there is a "glimmer of hope," *Mayes*, 198 F.3d at 466, or a "slight possibility of a right to relief" in state court. *Hartley*, 187 F.3d at 426.

### b. *South Carolina law*

In determining whether Plaintiff can establish a cause of action for IIED against a defendant, this court looks to South Carolina law. *Bettius & Sanderson, P.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 839 F.2d 1009, 1019 (4th Cir. 1988) ("When hearing a case pursuant to diversity jurisdiction, a federal court must determine issues of state law as it believes the highest court of the state would determine them."). The Workers' Compensation Act provides "rights and remedies" that "shall exclude all other rights and remedies of such employee . . .as against his employer, at common law or otherwise, on account of such injury, loss of service, or death." S.C. Code Ann. §42-1-540 (2009). The South Carolina Supreme Court has held "an employee's action against a company for intentional infliction of emotional distress . . . caused by the action[s] of another employee are [*sic*] within the scope of the Act since these actions arise from personal injury." *Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993), *as modified on reh'g* (Apr. 7, 1993) (citing *Loges v. Mack Trucks,* 417 S.E.2d 538 (S.C. 1992)). When the tortfeasor/co-employee is the alter ego of the employer, the employer's liability may fall outside the exclusivity

5

of the Act. *Id.* However, the alter ego exception applies only to dominant corporate owners and officers.[3] *McClain v. Pactiv Corp.*, 602 S.E.2d 87, 89 (S.C. Ct. App. 2004).

South Carolina courts have limited the intentional tort exception to the Act's exclusivity to "injuries inflicted by an employer who acts with a deliberate or specific intent to injure." *Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65–66 (S.C. 1993). "The same standard also would apply to injuries intentionally inflicted by a co-employee." *Id.; see also Dickert*, 428 S.E.2d at 702 ("[I]t is against public policy to extend this immunity to the co-employee who commits an intentional tortious act upon another employee. The Workers' Compensation Act may not be used as a shield for a co-employee's intentional injurious conduct."). "This exception is applicable to the intentional infliction of emotional distress," and "would also apply to injuries intentionally inflicted by a co-employee." *Edens v. Bellini*, 597 S.E.2d 863, 870 (S.C. Ct. App. 2004). Therefore, while an employer may not be sued in civil court for IIED based on a non-alter ego employee's actions due to the exclusivity of the Workers' Compensation Act, an employer or employee who acts with deliberate or specific intent to injure another employee, even in the course and scope of his employment, may not shelter himself within the exclusivity provision.

The intentional injury exception to §42-1-540 has been construed quite narrowly. *Edens,* 597 S.E.2d at 870-71. Liability cannot "be stretched to include accidental injuries caused by the

---

[3] The alter ego doctrine only applies to an *employer's* liability outside the Act for its own deliberate infliction of injury or that of an alter ego. *Dickert*, 428 S.E.2d at 701. The alter ego doctrine is not at issue in this case. Neither individual defendant is alleged to be a corporate owner or officer.

6

gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct . . .short of a conscious and deliberate intent directed to the purpose of inflicting an injury." *Id.* at 871. Even actions such as "knowingly ordering employees to perform an extremely dangerous job," or "refusing to respond to an employee's medical needs and restrictions" fail to rise to the level "of the kind of actual intention to injure that robs the injury of accidental character." *Id.*

> [W]hat is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus the accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the word, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

*Id.* (citing Larson's Workers' Compensation Law, § 103.03 (2002)).

### c. *Analysis*

In his motion to remand, Plaintiff argues 1) he may bring a tort claim against an individual co-employee for IIED; 2) the Workers' Compensation Act does not bar his action; 3) his injury is proprietary, not personal[4]; and 4) his claim falls within the deliberate intent to injure exception to

---

[4] Plaintiff is incorrect that a claim for IIED cannot be pursued via the Workers' Compensation Act because it is a proprietary and not a personal injury. *Dickert*, 428 S.E.2d at 701 (citing *Loges v. Mack Trucks,* 417 S.E.2d 538 (S.C. 1992) (The South Carolina Supreme Court has held "an employee's action against a company for intentional infliction of emotional distress and assault and battery caused by the action of another employee are within the scope of the [Workers' Compensation] Act since these actions arise from personal injury.")

7

the exclusivity provision of the Workers' Compensation Act. ECF No. 7. Defendant argues Plaintiff has no possibility of recovery against Schulze because his claim is barred by the exclusivity provision of the Workers' Compensation Act, Schulze is not an alter ego of the employer, Plaintiff failed to allege Schulze acted with specific intent to injure, and Plaintiff has a remedy for his alleged damages. ECF No. 16.

Plaintiff alleges the meeting scheduled at a remote location[5] caused him extreme stress and anxiety, culminating in him missing a day of work. Further, Plaintiff alleges ongoing harassment by Schulze and changes to his work duties, eventually leading to him becoming unable to work full time and having to use leave to supplement his income.

Despite the deferential fraudulent joinder standard, Plaintiff simply does not have a "glimmer of hope" of recovery against Schulze. Plaintiff has failed to allege Schulze acted with a deliberate or specific intent to injure him.[6] The factual allegations, including those raised in the motion to remand and reply, do not give rise to reasonable inference that Schulze acted with

---

[5] Although Plaintiff does not name Schulze by name as his supervisor in the Complaint, his motion to remand notes Schulze is his supervisor and was the one who "purposefully" scheduled the meeting far away from Plaintiff's work station. ECF No. 7-1 at 4.

[6] Plaintiff argues in his motion "[a]lthough Plaintiff's complaint does not specifically say the words 'deliberately intended to injure,' the actions alleged, if proven, show that Defendant Schulze deliberately intended to injure Plaintiff." ECF No. 17 at 2-3.

8

deliberate intent to injure. Moreover, Plaintiff has failed to allege facts sufficient to show a possibility of recovery on the other elements of his IIED claim.

In addition to the requirement to allege facts inferring Schulze acted with a deliberate or specific intent to injure him – in order to avoid the Workers' Compensation Act exclusivity provision – Plaintiff must also allege sufficient facts to make out the other elements of a claim for IIED against Schulze that is plausible on its face. In order to recover for IIED under South Carolina law, a plaintiff must establish:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; [7]
> (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;'
> (3) the actions of the defendant caused plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could be expected to endure it.'

*Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 70 (S.C. 2007) (citing *Ford v. Hutson*, 276 S.E.2d 776 (S.C. 1981)).

Here, Plaintiff's allegations against Schulze of scheduling a meeting far from Plaintiff's work station and changing his job duties, coupled with a vague reference to workplace harassment, are simply not "so extreme and outrageous as to exceed all possible bounds of decency" or

---

[7] While IIED can also apply to severe emotional distress inflicted recklessly, such a claim would fall under the exclusivity provision of the Workers' Compensation Act.

9

"atrocious, and utterly intolerable in a civilized society." *Hansson*, 650 S.E.2d at 70; *see Save Charleston Foundation v. Murray*, 333 S.E.2d 60 (S.C. Ct. App. 1985) ("There is some conduct involving personal interaction and causing emotional distress that, as a matter of law is beyond the embrace . . .of [outrage][8]."); *Shipman v. Glenn*, 443 S.E.2d 921 (S.C. Ct. App. 1994) ( granting summary judgment for defendant when the plaintiff's supervisor verbally abused and threatened her, and ridiculed her speech impediment).

In addition, the stress and anxiety complained of by Plaintiff was not so severe that "no reasonable man could be expected to endure it." *Hansson*, 650 S.E.2d at 70; *see Shipman*, 443 S.E.2d at 922 (Plaintiff's emotional distress of becoming upset, stressed and worried, causing her to be physically ill to the point of leaving work early, causing her to live in constant fear of her supervisor, which adversely affected her personal life and ability to function in her job, fell "far short of that needed for an action of this kind"). Under South Carolina law, Plaintiff does not have a glimmer of hope he can recover on his IIED claim.

---

[8] The South Carolina tort of intentional infliction of emotional distress is also known as "outrage." *Gattison v. South Carolina State College*, 456 S.E.2d 414, 416 (S.C. Ct. App. 1995).

For the above reasons, Schulze is fraudulently joined and his citizenship is disregarded for diversity purposes. Therefore, remand is improper and Plaintiff's motion to remand is denied. Defendant Schulze is hereby dismissed from this action without prejudice.[9]

### 2. **Motion to Dismiss**

All Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). Because the court finds Schulze was fraudulently joined, it addresses these legal arguments only as to the other Defendants; however, because the allegations against Schulze apply to the liability of Raycom, the factual allegations against all Defendants are considered. Defendants argue Plaintiff cannot maintain this civil IIED action against 1) either individual Defendant due to the exclusivity of the Workers' Compensation Act; 2) against any Defendant because there was no deliberate intent to injure; and 3) against any

---

[9] This court's inquiry into fraudulent joinder is to make a determination as to jurisdiction only, and thus the court is unable to make a decision as to dismissal on the merits. Therefore, the dismissal must be without prejudice. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 896 (8th Cir. 2014) (dismissing non-diverse defendant without prejudice due to the temporary jurisdiction allowed by the doctrine of fraudulent joinder); *Hogan v. Raymond Corp.*, 536 F. App'x 207, 211 (3d. Cir. 2013) ("The fraudulent joinder inquiry is a jurisdictional one and not a merits determination. Thus, instead of dismissing [the plaintiff's] claims against [the non-diverse defendant] with prejudice under Rule 12(b)(6), the District Court should have dismissed them for lack of subject matter jurisdiction under Rule 12(b)(1)."); *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("Once [the district court] determined that [the non-diverse defendants] were fraudulently joined, the district court had no jurisdiction to resolve the merits of the claims against them. In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice.").

11

Defendant because Plaintiff failed to allege facts sufficient to establish the elements of IIED against. ECF No. 5. Plaintiff argues he has established the elements of IIED against all Defendants and his claim is not barred by the exclusivity provision of the Workers' Compensation Act. ECF No. 10. Similar to his motion to remand, Plaintiff contends he has suffered a proprietary instead of personal injury[10], the intentional tort exception to the Workers' Compensation Act applies, and he has no remedy under the Workers' Compensation Act[11]. *Id.*

### a. Legal Standard

A motion under Federal Rule of Civil Procedure 12(c) is assessed under the same standards as a Rule 12(b)(6) motion. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim that entitles him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore*

---

[10] See footnote 2, *supra*.

[11] Provided he could make out the elements of a claim for IIED, Plaintiff would have a claim under the Workers' Compensation Act against his employer for actions undertaken by a co-employee. *See Dickert*, 428 S.E.2d at 701.

*Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302).

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need only accept as true the complaint's factual allegations, not its legal conclusions); *see also McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 587 (4th Cir. 2015) (noting "*Iqbal* and *Twombly* articulated a new requirement that a complaint must allege a plausible claim for relief, thus rejecting a standard that would allow a complaint to survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery." (emphasis and alteration in original, internal quotation marks omitted)); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012) for proposition

Plaintiff need not forecast evidence sufficient to prove the elements of a claim, but must allege sufficient facts to establish those elements).

    b. *Discussion*

As discussed above, Plaintiff has failed to allege facts sufficient to demonstrate Defendant Schulze acted with a deliberate or specific intent to injure, as needed to bring a tort action outside the Workers' Compensation Act's exclusivity provision. The same is true for Defendant Cannavo – there are no allegations of facts suggesting deliberate intent to injure as to Cannavo. Therefore, Plaintiff is unable to bring his claim for IIED against Cannavo outside the exclusivity provision of the Workers' Compensation Act.

Nor has Plaintiff alleged facts sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) as to Cannavo. Other than a vague allegation of harassment "by Defendants Schulze and Cannavo, and other employees," Plaintiff's only allegation against Cannavo is that he denied Plaintiff's request for accommodation and told him he would have to use FMLA. ECF No. 1-1 at 16. Similar to the allegations against Schulze, these are simply not sufficient to state a claim for IIED even assuming *arguendo* Plaintiff could get past the exclusivity provision of the Workers' Compensation Act. Plaintiff does not allege conduct extreme and outrageous enough, or emotional distress severe enough, to state a claim for IIED against Cannavo.

This standard applies to an employer as well as co-employees. *See Peay*, 437 S.E.2d at 65-66; *Edens*, 597 S.E.2d at 870. Plaintiff's allegations against Raycom include those against Schulze and Cannavo, harassment "by other employees" (ECF No. 1-1 at ¶ 8), a change in his job

description (Id. at ¶¶ 14-15) and a denial of his request for reasonable accommodations (*Id.* at ¶ 16 ("Raycom would not be able to accommodate him")). In Plaintiff's response in opposition to the motion to dismiss, Plaintiff alleges he "found himself put in various positions that Defendants knew or should have known would enflame his condition and put him in grievous pain." ECF No. 10 at 6. Plaintiff's allegations against Raycom suffer the same deficiency – they do not rise to the level required in *Edens* to allege intentional, versus accidental, injury. In fact, other than the allegations against Schulze as Raycom's employee (which, as noted above, are insufficient), Plaintiff fails to allege any facts from which one might infer intent to injure on behalf of Raycom. Although he argues allegations that "Defendants were aware of his condition and the pain he suffered, but nonetheless chose to force him to walk extended distances and carry heavy gear" (ECF No. 10 at 11) are sufficient to allege deliberate intent to injure, this is contrary to the high standard required by South Carolina law. Therefore, his claim against Raycom is precluded by the exclusivity provision of the Workers' Compensation Act.

In addition, as discussed above, none of Plaintiff's allegations of emotional distress rise to the level to be considered "so extreme and outrageous so as to exceed all possible bounds of decency." Finally, Plaintiff's allegations fail on the last prong of the IIED claim, the severity of the distress experienced. Like the claim against Cannavo, Plaintiff fails to state a claim for IIED against Raycom.

**CONCLUSION**

Plaintiff has not shown a "glimmer of hope" of recovering against Schulze, who is thus fraudulently joined. Plaintiff's motion for remand (ECF No. 7) is denied and Schulze is dismissed without prejudice. For the same reasons, Plaintiff fails to state a claim for IIED against Cannavo and Raycom, and Defendants' motion to dismiss (ECF No. 5) is granted. Although Plaintiff requests leave to amend his complaint (ECF No. 10, fn1), he has failed to suggest the existence of facts that would cure the deficiencies in his IIED claim. Nor has he submitted a motion for leave to amend or a proposed Amended Complaint. Accordingly, Plaintiff's request to amend is denied and this matter is dismissed without prejudice as to Cannavo and Raycom.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>Senior United States District Judge

Columbia, South Carolina
August 29, 2017